UNITED STATS DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Grand Jury Sworn In September 30, 2004
Holding A Criminal Term

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: |
| | : | |
| | : | GRAND JURY ORIGINAL |
| v. | : | |
| | : | VIOLATIONS: |
| | : | |
| | : | |
| | : | 18 U.S.C. § 371 (Conspiracy) |
| AISSATOU D. KOUNDOUL, | : | 18 U.S.C. § 666 (Theft Concerning |
| | | Programs Receiving Federal Funds) |
| SHALOME M. ODOKARA, | : | 18 U.S.C. § 1956(h) (Conspiracy to |
| | : | Commit Money Laundering) |
| Defendants. | : | 18 U.S.C. § 1956 (Money Laundering) |
| | : | 18 U.S.C. § 2 (Aiding, Abetting and |
| | : | Causing an Act to be Done) |
| | : | 18 U.S.C. §§ 2461(c) and 981(a)(1)(C) |
| | : | 18 U.S.C. § 982(a)(1)(A) |
| _____ | : | (Criminal Forfeiture) |

INDICTMENT

The Grand Jury charges that:

COUNT ONE - CONSPIRACY

INTRODUCTION

_____At all times relevant to this Indictment:

The World Bank Group

1._____The World Bank Group ("WBG") was an international organization, owned and/or

financed by over 180 member countries, whose mission was to fight poverty and improve the living

standards of people in the developing world.  The WBG's headquarters were located at 1818 H

Street, N.W., Washington, D.C.

2.＿＿＿The International Bank for Reconstruction and Development ("the Bank") was a component of the WBG.  The Bank aimed to reduce poverty in middle-income and creditworthy poorer countries by promoting sustainable development through loans, guarantees, and analytical and advisory services.  From October 1, 2000 to September 30, 2001, the Bank received millions in dollars in federal aid and assistance from the United States government.

<u>The Defendants</u>

3.＿＿＿Defendant AISSATOU D. KOUNDOUL was employed as an accounting assistant ("assistant") in the Bank's accounting department.  Defendant AISSATOU D. KOUNDOUL's job responsibilities included: (i) reviewing, processing and executing accounting transactions related to the business of the Bank; and (ii) consulting with persons and entities both inside and outside the Bank to effect payments and resolve accounting related issues.

4.＿＿＿Defendant SHALOME M. ODOKARA was occasionally employed as a consultant with the Bank.  Defendant SHALOME M. ODOKARA was always paid by the Bank on time and in full.

5.＿＿＿Defendant SHALOME M. ODOKARA and defendant AISSATOU D. KOUNDOUL were friends as of approximately 2000.

6.＿＿＿The Bank-Fund Staff Federal Credit Union in Washington, D.C. ("BFSFCU") served the private banking needs of WBG staff members.  Defendant SHALOME M. ODOKARA maintained a personal account in her name at the BFSFCU ("defendant SHALOME M. ODOKARA'S BFSFCU account").  Defendant SHALOME M. ODOKARA also maintained a business account under the name of Women In Need at the BFSFCU ("Women in Need account").

7.＿＿＿＿Defendant AISSATOU D. KOUNDOUL maintained an account in her name at the BFSFCU ("defendant AISSATOU D. KOUNDOUL's BFSFCU account"). Defendant AISSATOU D. KOUNDOUL also maintained an account in her name at the Chevy Chase Bank located in Laurel, Maryland ("Chevy Chase account").

8.＿＿＿＿In February, 2001, defendant AISSATOU D. KOUNDOUL signed a Bank form advising her that she was going to lose her job at the Bank in the Fall of 2001.

<u>Payment of Bank Consultants</u>

9.＿＿＿＿The Bank appointed consultants for a fixed period of time to provide work on specified assignments. At the time of the appointment, each consultant provided the Bank with a mailing address, contact information, email address, and banking information.

10.＿＿＿＿Consultants were usually paid on their contracts with the Bank on a periodic basis. To receive payment, a consultant submitted an invoice to the Bank's hiring department responsible for supervising the consultant's performance under the contract. The pertinent information from the invoice was then entered into a computer program, generally referred to as SAP, which the Bank used to process its payments to consultants. For each consultant, SAP maintained the consultant's bank routing and/or mailing information and payment method.

11.＿＿＿＿The Bank's accounting department was responsible for processing payments to the consultants. Consultant's were generally paid by money transfer or by check. For each unpaid invoice, an assistant confirmed that SAP included the consultant's payment method, bank routing information and/or mailing address. Thereafter, an assistant would create a payment request to authorize the Bank's treasury department to send a money wire or mail a check per the consultant's SAP payment information.

12. On occasion, for a variety of reasons, the wire transfers or checks did not accomplish the transfer of Bank monies to the consultant. Such reasons included, for example, instances where the consultant's bank account had been closed, where the consultant had opened a new bank account without disclosing the new account information to the Bank, or where the consultant had moved to a new address without disclosing the new address to the Bank. In those instances, the check or money transfer was returned to the Bank ("returned Bank funds").

13. The Bank's accounts payable section was responsible for fixing the problems associated with returned Bank funds. For example, an assistant would help identify the consultant's correct bank routing information and/or mailing address. Once an assistant obtained the consultant's correct payment information, the assistant would request that a more senior assistant modify the consultant's information in SAP to reflect the new payment information. Once the consultant's information was changed consistent with the assistant's instructions, an assistant prepared a payment request for the Bank's treasury department to pay the consultant at the consultant's new address and/or bank account in SAP.

14. When returned Bank funds were deposited by the Bank, SAP automatically blocked the item from being repaid. A payment block would ensure that the Bank did not attempt to make additional payments based on the erroneous information in SAP. An assistant would lift this payment block when the consultant's new information was entered in SAP.

15. Each assistant entered SAP with a personal log-in identification code and password. The assistant's log-in identification code was a unique Bank employee identifier based on his/her employee identification number. Each assistant created his or her password. Bank policy prohibited the sharing of SAP log-in identification codes and passwords.

-4-

<u>The Consultants</u>

16.     W.B. was a Bank consultant who was owed money by the Bank.

17.     I.G. was a Bank consultant who was owed money by the Bank.

18.     S.M. was a Bank consultant who was owed money by the Bank.

19.     J.L. was a Bank consultant who was owed money by the Bank.

20.     D.L. was a Bank consultant who was owed money by the Bank.

21.     M.G. was a Bank consultant who was owed money by the Bank

22.     P.T. was a Bank consultant who was owed money by the Bank.

23.     M.M. was a Bank consultant who was owed money by the Bank.

24.     E.H. was a Bank consultant to whom the Bank issued a credit in the amount of $20,218.60.

## **THE CONSPIRACY**

25.     From between on or about March 27, 2001 until on or about September 24, 2001, in the District of Columbia and elsewhere, defendants AISSATOU D. KOUNDOUL and SHALOME M. ODOKARA did unlawfully and knowingly combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, that is,

          a.      to embezzle, steal, obtain by fraud, and without authority convert to the use of a person not the rightful owner, monies, worth at least $5,000, under the care, custody, and control of the Bank, an entity which received benefits in excess of $10,000 from the federal government for the one-year period of October 1, 2000 to September 30, 2001, with a federal interest having been implicated by said embezzlement, stealing, fraud, and conversion, in violation of Title 18, United States Code, §§ 666(a)(1)(A) and 2.

b.      causing the use of interstate wire communications in furtherance of a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. §§ 1343 and 2.

## GOAL OF THE CONSPIRACY

26.      It was a goal of the conspiracy that defendants AISSATOU D. KOUNDOUL and SHALOME M. ODOKARA would unlawfully enrich themselves by obtaining Bank funds by fraud.

## MANNER AND MEANS OF THE CONSPIRACY

27.      It was a part of the conspiracy that defendant AISSATOU D. KOUNDOUL unlawfully diverted returned Bank funds to defendant SHALOME M. ODOKARA, who then, soon thereafter, redirected a substantial portion of the diverted monies to defendant AISSATOU D. KOUNDOUL, thereby resulting in an immediate profit to be enjoyed by both defendants.

28.      It was further a part of the conspiracy that defendant AISSATOU D. KOUNDOUL used SAP to identify returned Bank funds owed to its consultants and returned by the Bank's treasury department.  For each returned item, defendant AISSATOU D. KOUNDOUL would purport to identify the cause for the returned Bank funds and to research and obtain the consultant's correct bank routing information and/or mailing address.

29.      It was further a part of the conspiracy that defendant AISSATOU D. KOUNDOUL would cause the diversion of the returned Bank funds to defendant SHALOME M. ODOKARA by:

(a)      falsely transferring, or informing a more senior assistant to transfer, a credit owed to other consultants from the returned Bank funds to defendant SHALOME M. ODOKARA's vendor account with the Bank;

(b)      falsely requesting a more senior assistant to replace other consultants'

payment information in SAP with defendant SHALOME M. ODOKARA's account information, thereby misleading the more senior assistant to substitute the consultant's account information with defendant SHALOME M. ODOKARA's account information;

(c)    falsely changing, and causing the change of, other consultants' payment method in SAP to money wire into the BFSFCU;

(d)    falsely removing, and causing the removal of, the payment block in SAP on the returned Bank funds intended for other consultants; and

(e)    falsely preparing, and causing the preparation of, payment requests for the Bank's treasury department to wire returned Bank funds to defendant SHALOME M. ODOKARA's BFSFCU account, thereby misleading the Bank to issue payments, owed by the Bank to other consultants, to defendant SHALOME M. ODOKARA.

30.    It was further a part of the conspiracy that defendant AISSATOU D. KOUNDOUL would, thereafter, falsely cause the Bank to issue into defendant SHALOME M. ODOKARA's BFSFCU account nine money wires, totaling approximately $108,666.24 in returned Bank funds owed, in part, to other consultants.

31.    It was further a part of the conspiracy that, soon after the receipt of each fraudulent money wire, defendant SHALOME M. ODOKARA would redirect to defendant AISSATOU D. KOUNDOUL a substantial portion of the stolen Bank funds, totaling approximately $41,513, by money wire, personal check and cashier's check.

32.    It was further a part of the conspiracy that defendant SHALOME M. ODOKARA and defendant AISSATOU D. KOUNDOUL conspired to steal Bank funds intended for the following consultants by means of the fraudulent scheme set forth above:  W.B., I.G., S.M., J.L., D.L., P.T.,

M.M. and E.H.  As a result of the conspiracy, defendants AISSATOU D. KOUNDOUL and SHALOME M. ODOKARA fraudulently stole approximately $108,666.24 from the Bank.

## OVERT ACTS

33.    Within the District of Columbia and elsewhere, in furtherance of the conspiracy and to accomplish the goals thereof, the following overt acts, among others, were committed and caused to be committed by defendants AISSATOU D. KOUNDOUL and SHALOME M. ODOKARA:

### Overt Acts (1)-(7) Regarding Diversion of Returned Bank Funds Owed to W.B.

(1)____On or about March 27, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to transfer a $16,875 credit involving returned Bank funds owed by the Bank to W.B. ("$16,875 payment") to defendant SHALOME M. ODOKARA's vendor account with the Bank.

(2)____On or about March 27, 2001, defendant AISSATOU D. KOUNDOUL changed the payment method in SAP for the $16,875 payment to money wire into the BFSFCU.

(3)    On or about March 27, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to remove the payment block in SAP on the $16,875 payment.

(4)____On or about March 27, 2001, defendant AISSATOU D. KOUNDOUL prepared a payment request for the Bank's treasury department to wire $14,875 in returned Bank funds owed by the Bank to W.B. into defendant SHALOME M. ODOKARA's BFSFCU account.

(5)____On or about March 28, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to wire $14,875 in returned Bank funds owed by the Bank to W.B. into defendant SHALOME M. ODOKARA's BFSFCU account.

(6)____On or about March 28, 2001, defendant SHALOME M. ODOKARA wrote a personal check in the amount of $7,400 ("the $7,400 check") to defendant AISSATOU D. KOUNDOUL.

(7)____On or about March 28, 2001, defendant AISSATOU D. KOUNDOUL deposited the $7,400 check into defendant AISSATOU D. KOUNDOUL's BFSFCU account.

**Overt Acts (8)-(13) Regarding Diversion of Returned Bank Funds owed to I.G.**

(8)____On or about March 30, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to replace I.G.'s account number with defendant SHALOME M. ODOKARA's BFSFCU account number in SAP.

(9)____On or about March 30, 2001, defendant AISSATOU D. KOUNDOUL changed the payment method in SAP for a $5,000 payment of returned Bank funds intended for I.G. ("$5,000 payment") to money wire into BFSFCU.

(10)___On or about March 30, 2001, defendant AISSATOU D. KOUNDOUL prepared a payment request for the Bank's treasury department to wire the $5,000 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(11)___On or about April 2, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to wire the $5,000 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(12)___On or about April 3, 2001, defendant SHALOME M. ODOKARA wrote a BFSFCU check in the amount of $2,500 ("$2,500 check") to defendant AISSATOU D. KOUNDOUL.

(13)___On or about April 4, 2001, defendant AISSATOU D. KOUNDOUL deposited the $2,500 check into defendant AISSATOU D. KOUNDOUL's Chevy Chase account.

**Overt Acts (14)-(20) Regarding Diversion of Returned Bank Funds Intended for S.M.**

(14)___On or about April 9, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to replace S.M.'s account number with defendant SHALOME M. ODOKARA's

BFSFCU account number in SAP.

(15)___On or about April 9, 2001, defendant AISSATOU D. KOUNDOUL changed the payment method in SAP for a $7,761 payment of returned Bank funds owed by the Bank to S.M. ("$7,761 payment") to money wire into BFSFCU.

(16)___On or about April 9, 2001, defendant AISSATOU D. KOUNDOUL removed the payment block in SAP on the $7,761 payment.

(17)___On or about April 9, 2001, defendant AISSATOU D. KOUNDOUL prepared a payment request for the Bank's treasury department to wire the $7,761 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(18)___On or about April 10, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to send by wire the $7,761 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(19)___On or about April 11, 2001, defendant SHALOME M. ODOKARA purchased a cashier's check in the amount of $3,500 ("$3,500 cashier's check") and payable to defendant AISSATOU D. KOUNDOUL.

(20)___On or about April 11, 2001, defendant AISSATOU D. KOUNDOUL deposited the $3,500 cashier's check into defendant AISSATOU D. KOUNDOUL's Chevy Chase account.

**Overt Acts (21)-(29) Regarding Diversion of Returned Bank Funds Owed to J.L.**

(21)___On or about April 18, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to replace J.L.'s account number with defendant SHALOME M. ODOKARA's Women in Need account number in SAP.

(22)___On or about April 19, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank

to issue a payment request for its treasury department to wire a $10,000 payment in returned Bank funds owed by the Bank to J.L. ("$10,000 payment") into defendant SHALOME M. ODOKARA's Women in Need account.

(23)___On or about April 19, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to send by wire the $10,000 payment into defendant SHALOME M. ODOKARA's Women in Need account.

(24)___On or about May 23, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to replace J.L.'s account number with defendant SHALOME M. ODOKARA's BFSFCU account number in SAP.

(25)___On or about May 23, 2001, defendant AISSATOU D. KOUNDOUL changed the payment method in SAP for the $10,000 payment to money wire into BFSFCU.

(26)___On or about May 23, 2001, defendant AISSATOU D. KOUNDOUL removed the payment block in SAP on the $10,000 payment.

(27)___On or about May 23, 2001, defendant AISSATOU D. KOUNDOUL prepared a payment request for the Bank's treasury department to wire the $10,000 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(28)___On or about May 24, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to wire the $10,000 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(29)___On or about May 24, 2001, defendant SHALOME M. ODOKARA caused a money wire in the amount of $3,000 to be sent from defendant SHALOME M. ODOKARA's BFSFCU account to defendant AISSATOU D. KOUNDOUL's BFSFCU account.

**Overt Acts (30)-(36) Regarding Diversion of Returned Bank Funds Owed to D.L.**

(30)___On or about April 23, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to replace D.L.'s account number with defendant SHALOME M. ODOKARA's BFSFCU number in SAP.

_____(31)___On or about April 23, 2001, defendant AISSATOU D. KOUNDOUL removed the payment method by electronic funds in SAP for a $9,495 payment of returned Bank funds owed by the Bank to D.L. ("$9,495 payment").

(32)___On or about April 23, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to change the payment method in SAP for the $9,495 payment to money wire into BFSFCU.

(33)___On or about April 23, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to remove the payment block in SAP on the $9,495 payment.

(34)___On or about April 23, 2001, defendant AISSATOU D. KOUNDOUL caused an assistant to prepare a payment request for the Bank's treasury department to wire the $9,495 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(35)___On or about April 24, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to wire the $9,495 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(36)___On or about April 24, 2001, defendant SHALOME M. ODOKARA caused a money wire in the amount of $4,600 to be sent from defendant SHALOME M. ODOKARA's BFSFCU account to defendant AISSATOU D. KOUNDOUL's BFSFCU account.

**Overt Acts (37)-(42) Regarding Diversion of Returned Bank Funds Owed to M.G.**

(37) Between on or about March 27, 2001, and on or about June 8, 2001, defendant AISSATOU D. KOUNDOUL handwrote a request to replace M.G.'s account number with defendant SHALOME M. ODOKARA's BFSFCU account number in SAP.

(38) On or about June 8, 2001, defendant AISSATOU D. KOUNDOUL caused a more senior assistant to replace M.G.'s account number with defendant SHALOME M. ODOKARA's BFSFCU account number in SAP.

(39) On or about June 8, 2001, defendant AISSATOU D. KOUNDOUL caused an assistant-in-training to issue a payment request for the Bank's treasury department to wire $20,459.24 in returned Bank funds owed by the Bank to M.G. ("$20,459.24 payment") into defendant SHALOME M. ODOKARA's BFSFCU account.

(40) On or about June 11, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to wire the $20,459.24 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(41) On or about June 11, 2001, defendant SHALOME M. ODOKARA caused a money wire in the amount of $5,000 to be sent from defendant SHALOME M. ODOKARA's BFSFCU account to defendant AISSATOU D. KOUNDOUL's BFSFCU account.

(42) On or about June 11, 2001, defendant SHALOME M. ODOKARA caused a money wire in the amount of $2,513 to be sent from defendant SHALOME M. ODOKARA's BFSFCU account to defendant AISSATOU D. KOUNDOUL's BFSFCU account.

**Overt Acts (43)-(50) Regarding Diversion of Returned Bank Funds Owed to P.T.**

(43) On or about June 19, 2001, defendant AISSATOU D. KOUNDOUL caused a more

senior assistant to replace P.T.'s account number with defendant SHALOME M. ODOKARA's BFSFCU account number in SAP.

(44) ___On or about June 20, 2001, defendant AISSATOU D. KOUNDOUL caused an assistant-in-training to change the payment method in SAP for a $5,562 payment of returned Bank funds owed by the Bank to P.T. ("$5,562 payment") to money wire into BFSFCU.

(45)___On or about June 20, 2001, defendant AISSATOU D. KOUNDOUL caused an assistant-in-training to remove the payment block in SAP on the $5,562 payment.

(46) ___On or about June 20, 2001, defendant AISSATOU D. KOUNDOUL caused an assistant-in-training to change the payment method in SAP for a $3,296 payment of returned Bank funds owed by the Bank to P.T. ("$3,296 payment") to money wire into BFSFCU.

(47)___On or about June 20, 2001, defendant AISSATOU D. KOUNDOUL caused an assistant-in-training to remove the payment block in SAP on the $3,296 payment.

(48)___On or about June 21, 2001, defendant AISSATOU D. KOUNDOUL caused an assistant-in-training to issue a payment request for the Bank's treasury department to wire $8,858 in returned Bank funds owed by the Bank to P.T. ("$8,858 payment") into defendant SHALOME M. ODOKARA's BFSFCU account.

(49)___On or about June 22, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to wire the $8,858 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(50)___On or about June 27, 2001, defendant SHALOME M. ODOKARA caused a money wire in the amount of $6,000 to be sent from defendant SHALOME M. ODOKARA's BFSFCU account to defendant AISSATOU D. KOUNDOUL's BFSFCU account.

-14-

**Overt Acts (51)-(60) Regarding Diversion of Returned Bank Funds Owed to M.M.**

(51)    On or about June 26, 2001, defendant AISSATOU D. KOUNDOUL transferred a $12,000 credit involving returned Bank funds owed by the Bank to M.M. ("$12,000 payment") to defendant SHALOME M. ODOKARA's vendor account with the Bank.

(52)    On or about June 26, 2001, defendant AISSATOU D. KOUNDOUL changed the payment method in SAP for the $12,000 payment to money wire into BFSFCU.

(53)    On or about June 26, 2001, defendant AISSATOU D. KOUNDOUL removed the payment block in SAP on the $12,000 payment.

(54)    On or about June 26, 2001, defendant AISSATOU D. KOUNDOUL caused an assistant-in-training to issue a payment request for the Bank's treasury department to wire the $12,000 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(55)    On or about June 27, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to wire the $12,000 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(56)    On or about August 24, 2001, defendant AISSATOU D. KOUNDOUL issued a $12,000 credit to M.M. in SAP.

(57)    On or about August 24, 2001, defendant AISSATOU D. KOUNDOUL prepared a payment request for the Bank's  treasury department to wire a $12,000 payment to M.M.

(58)    On or about August 27, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to wire $12,000 from the Bank to M.M. ("August 27, 2001 money wire").

(59)    On or about September 24, 2001, defendant AISSATOU D. KOUNDOUL transferred to defendant SHALOME M. ODOKARA's vendor account with the Bank the $12,000 debt ("$12,000

debt") owed to the Bank by M.M. as a result of the August 27, 2001 money wire.

(60) __On or about September 24, 2001, defendant AISSATOU D. KOUNDOUL set a payment block in SAP against the $12,000 debt.

**Overt Acts (61)-(66) Regarding Diversion of Returned Bank Funds Intended for E.H.**

(61)___On or about July 6, 2001, defendant AISSATOU D. KOUNDOUL transferred a $20,218 credit involving returned Bank funds intended for E.H. ("$20,218 payment") to M.G.'s vendor account with the Bank.

(62) __On or about July 6, 2001, defendant AISSATOU D. KOUNDOUL changed the payment method in SAP for the $20,218 payment to money wire into BFSFCU.

(63) __On or about July 6, 2001, defendant AISSATOU D. KOUNDOUL removed the payment block in SAP on the $20,218 payment.

(64)___On or about July 6, 2001, defendant AISSATOU D. KOUNDOUL caused an assistant-in-training to issue a payment request for the Bank's treasury department to wire the $20,218 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(65)___On or about July 9, 2001, defendant AISSATOU D. KOUNDOUL caused the Bank's treasury department to wire the $20,218 payment into defendant SHALOME M. ODOKARA's BFSFCU account.

(66)___On or about July 9, 2001, defendant SHALOME M. ODOKARA caused $7,000 wire to be sent from defendant SHALOME M. ODOKARA's BFSFCU account to defendant AISSATOU D. KOUNDOUL's BFSFCU account.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done, in violation of Title 18 United States Code, Sections 371 and 2)**

## COUNT TWO - THEFT CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS

1.      Paragraphs 1 through 24 and 27 through 33 of Count One of this Indictment are realleged and incorporated by reference as is set out in full.

2.      From between on or about March 27, 2001 until on or about July 9, 2001, in a continuing course of conduct, in the District of Columbia and elsewhere, defendants AISSATOU D. KOUNDOUL and SHALOME M. ODOKARA, as principals and aiders and abettors, embezzled, stole, obtained by fraud, and without authority converted to the use of a person not the rightful owner, monies, worth at least $5,000, under the care, custody, and control of the Bank, an entity which received benefits in excess of $10,000 from the federal government for one-year period of October 1, 2000 to September 30, 2001, with a federal interest having been implicated by said embezzlement, stealing, fraud, and conversion.

**(Theft Concerning Programs Receiving Federal Funds, Aiding and Abetting, Causing an Act to be Done, in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2)**

## COUNT THREE - CONSPIRACY TO COMMIT MONEY LAUNDERING

### INTRODUCTION

1.      Paragraphs 1 through 24 of Count One are hereby realleged and incorporated by reference as if set forth in full.

### THE CONSPIRACY

2.      From on or about the March 27, 2001 until on or about September 24, 2001, within the District of Columbia and elsewhere, defendants AISSATOU D. KOUNDOUL, SHALOME M. ODOKARA did unlawfully, willfully and knowingly combine, conspire, confederate and agree with each other to commit an offense against the United States, namely to conduct and attempt to conduct

a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, that is, Theft Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 666:

       (1)    with the intent to promote the carrying on of the offense of Theft Concerning Programs Receiving Federal Funds, as set forth in Count Two of this Indictment, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2; and

       (2)    knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

## THE GOAL OF THE CONSPIRACY

3.    The goal of the conspiracy was for defendants AISSATOU D. KOUNDOUL and SHALOME M. ODOKARA to conceal their receipt of funds and to promote their unlawful activity for their personal use and benefit.

## MANNER OF MEANS OF THE CONSPIRACY

In order to achieve the goal of the conspiracy, defendants AISSATOU D. KOUNDOUL and SHALOME M. ODOKARA would and did use the following manner and means among others:

4.    Paragraphs 27 through 32 of Count One are hereby realleged and incorporated by reference as if set forth in full.

5.    Through the above-mentioned means, the defendants received over $108,666.24 in stolen funds and converted $41,513 in proceeds from said stolen funds to some other form or item

of value.

**(Conspiracy to Commit Money Laundering,
Aiding and Abetting, Causing an Act to be Done
in violation of Title 18, United States Code, Sections 1956(h) and 2)**

**COUNT FOUR - MONEY LAUNDERING**

1.      From in or about March 27, 2001 until on or about September 24, 2001, the Theft Concerning Programs Receiving Federal Funds alleged in Count Two of this Indictment was perpetrated in the District of Columbia.

2.      Paragraphs 6 through 7 of Count One are hereby realleged and incorporated by reference as if set forth in full.

3.      On or about the dates set forth in the first two columns of the table in paragraph 4, defendants AISSATOU D. KOUNDOUL and SHALOME M. ODOKARA, as principals and aiders and abettors, received the specified stolen Bank funds by money wire into defendant SHALOME M. ODOKARA'S BFSFCU account.

4.      On or about the dates set forth in the third and fourth columns of the following table, defendants AISSATOU D. KOUNDOUL and SHALOME M. ODOKARA, as principals and aiders and abettors, knowing that the monies involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted and attempted to conduct the following financial transactions resulting in withdrawals from defendant SHALOME M. ODOKARA's BFSFCU account and deposits into defendant AISSATOU D. KOUNDOUL's BFSFCU account or Chevy Chase account:

| DEPOSITS OF PROCEEDS | | MONEY LAUNDERING TRANSACTIONS | |
|---|---|---|---|
| **Date** | **Description of deposit into defendant Odokara's BFSFCU account** | **Date** | **Description of withdrawal from defendant Odokara's BFSFCU account and deposit into defendant Koundoul's BFSFCU or Chevy Chase account** |
| March 28, 2001 | Bank money wire in the amount of **$14,875** | | |
| | | March 28, 2001 | check #1386 in the amount of **$7,400** |
| April 2, 2001 | Bank money wire in the amount of **$5,000** | | |
| | | April 4, 2001 | check #1388 in the amount of **$2,500** |
| April 10, 2001 | Bank money wire in the amount of **$7,761** | | |
| | | April 11, 2001 | cashier's check #556386 in the amount of **$3,500** |
| April 24, 2001 | Bank money wire in the amount of **$9,495** | | |
| | | April 24, 2001 | money wire in the amount of **$4,600** |
| May 24, 2001 | Bank money wire in the amount of **$10,000** | | |
| | | May 24, 2001 | money wire in the amount of **$3,000** |
| June 11, 2001 | Bank money wire in the amount of **$20,459.24** | | |
| | | June 11, 2001 | money wire in the amount of **$5,000** |
| | | June 11, 2001 | money wire in the amount of **$2,513** |
| June 22, 2001 | Bank money wire in the amount of **$8,858** | | |
| June 27, 2001 | Bank money wire in the amount of **$12,000** | | |

| | | June 27, 2001 | money wire in the amount of **$6,000** |
|---|---|---|---|
| July 9, 2001 | Bank money wire in the amount of **$21,218** | | |
| | | July 9, 2001 | money wire in the amount of **$7,000** |

5.    The above financial transactions identified as "Money Laundering Transactions" in the table set forth in paragraph 4 were, in fact, conducted with the proceeds of the Theft Concerning Programs Receiving Federal Funds set forth in Count Two of this Indictment.

6.    The defendants AISSATOU D. KOUNDOUL and SHALOME ODOKARA undertook said financial transactions: (a) with the intent to promote the carrying on of the offense of Theft Concerning Programs Receiving Federal Funds, as set forth in Count Two of this Indictment, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2; and (b) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the Theft Concerning Programs Receiving Federal Funds set forth in Count Two of this Indictment, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

**(Money Laundering in violation of Title 18, United States Code,
Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i);
Aiding, Abetting and Causing an Act to be Done,
in violation of Title 18, United States Code, Section 2)**

**FORFEITURE ALLEGATION UNDER 28 U.S.C. § 2461 AND 18 U.S.C. § 981(a)(1)(C)**

1.    The violation alleged in Counts One and Two of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), incorporating by reference Title 18, United States Code,

-21-

Section 1956(c)(7).

2.      As a result of the offenses alleged in Counts One and Two of this Indictment, the defendants in this Indictment shall forfeit to the United States, any property constituting or derived from proceeds traceable to said violation, including but not limited to the following:

> A sum of money equal to $108,666.24, representing the amount of proceeds obtained as a result of the offense of conspiracy to commit theft concerning programs receiving federal funds, in violation of 18 U.S.C. §§ 371 and 666(a)(1)(A).

By virtue of the commission of the felony offense charged in Counts One and Two of this Indictment, any and all interest that the defendants have in the property constituting or derived from proceeds traceable to such offense is vested in the United States and hereby forfeited to the United States pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), incorporating by reference Title 18, United States Code, Section 1956(c)(7).

3.      If any of the property described above as being subject to forfeiture pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), incorporating by reference Title 18, United States Code, Section 1956(c)(7), as a result of any act or omission of the defendants:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third person;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property that cannot be subdivided without difficulty;

-22-

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C))**

**FORFEITURE ALLEGATION UNDER 18 U.S.C. § 982(a)(1)(A)**

1.    The violations alleged in Counts Three and Four of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provision of 18 U.S.C. § 982(a)(1)(A).

2.    As a result of the offenses alleged in Counts Three and Four of this Indictment, the defendants in this Indictment shall forfeit to the United States, any property involved in such offenses, or any property traceable to such property, including but not limited to the following:

(a)    <u>Money Judgment with respect to Count Three</u>:

A sum of money equal to $41,513, representing the amount of unrecovered proceeds obtained as a result of the offenses of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), for which the defendants are jointly and severally liable.

(b)    <u>Money Judgment with respect to Count Four</u>:

A sum of money equal to $41,513, representing the amount of proceeds obtained as a result of the offenses of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), for which the defendants are jointly and severally liable.

By virtue of the commission of the felony offenses charged in Counts Three and Four of this

Indictment, any and all interest that the defendants have in the property involved in such offenses, or any property traceable to such property, is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1)(A).

3.      If any of the property described above as being subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1)(A), incorporating by reference 18 U.S.C. § 1956(c)(7), as a result of any act or omission of the defendants:

     (a)     cannot be located upon the exercise of due diligence;

     (b)     has been transferred or sold to, or deposited with, a third person;

     (c)     has been placed beyond the jurisdiction of the Court;

     (d)     has been substantially diminished in value; or

     (e)     has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of said property listed above as being subject to

forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Sections 982(a)(1)(A) and 982(b)(1))**

A TRUE BILL

FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA