IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.             )<br>)<br>SHALOME ODOKARA, )<br>    et al.     )<br>    Defendants. )<br>) | Criminal No. 06-045 (EGS) |

DEFENDANT'S MOTION FOR DOWNWARD
DEPARTURE AND MEMORANDUM IN AID OF SENTENCING

Ms. Shalome Odokara, by her attorney, hereby respectfully submits this Motion for Downward Departure and Memorandum in Aid of Sentencing.  Based on all of the sentencing factors in this case, including the correct guideline range (which includes a departure based on the overstatement of Ms. Odokara's criminal history, see infra), the defense respectfully submits that the Court should sentence Ms. Odokara to a term of probation.

BACKGROUND

A.      Shalome Odokara.

Ms. Odokara's life story is a fairly remarkable one.  Ms. Odokara has risen from troubled beginnings to become a nationally known provider of services to victims of domestic violence.

In 1989, in her twenties, Ms. Odokara was pregnant, desperate and penniless.  Ms. Odokara's then boyfriend proposed that she smuggle heroin to the United States, agreeing to provide her with the airfare and everything else necessary for her travel.  After some consternation, Ms. Odokara agreed to transport the drugs, which were secreted inside her vagina and rectum, from Nigeria to Maryland, by way of New York.  While on the flight to New York,

Ms. Odokara began hemorrhaging blood from her vagina, and informed the doctor who assisted her about her condition.

After going to a hospital in New York, Ms. Odokara was arrested. She received a sentence of 16 months to 4 years imprisonment. Ms. Odokara gave birth to her son, Michael Odokara, while incarcerated. After serving approximately a year and a half, Ms. Odokara was released to parole, which she successfully completed in 1993.

Following that experience, Mr. Odokara was able to get on her feet and start helping others. Since 2000, Ms. Odokara has been the director of Women In Need, a non-profit organization now based in Portland, Maine. Women in Need provides assistance to victims of domestic violence. In 2000, Women in Need was a vendor for the World Bank, providing services to victims of domestic violence on the Bank's behalf.

Since moving to Maine in early 2002 and building Women in Need in that region, Ms. Odokara has risen to prominence in terms of advocating on behalf of victims of domestic violence, both in Maine and nationally. Furthermore, Ms. Odokara is currently in the process of opening a factory in Auburn, Maine that will employ women victims of domestic violence, in an effort to allow them to become economically independent. As noted in a sentencing letter from her friend, Michael J. Waxman, Esq., Ms. Odokara's "work and her life are about helping people who need help, who lack a voice, who are often overlooked by those in power." Ex. 1 (Sentencing Letter from Michael J. Waxman, Esq.).

In terms of her own family, Ms. Odokara is a single mother of her 17 year old son, Michael Odokara. See Ex. 2 (Sentencing Letter from Michael Odokara). Michael is an excellent student and is currently in the process of applying to top universities with the hopes of obtaining

a scholarship for his continued education.

**B.    Offense Conduct.**

The offense conduct is set forth in paragraphs 8-17 and will not be repeated here.  There are several points, however, worth highlighting:

First, it should be clear that Ms. Koundoul and Ms. Odokara were participating in fundamentally different crimes.  Ms. Koundoul was embezzling money from the World Bank.  Ms. Odokara, however, believed that the same money was not embezzled from the Bank, but rather was legitimate money earned by Ms. Koundoul's husband, from the purported business that he was running abroad.  See PSR ¶ 12 ("Koundoul told Odokara that the funds in fact came from a business run by Koundoul's husband that generated significant amounts of revenue in cash currency").  Ms. Odokara's offense is helping Ms. Koundoul bring this money–which she did not realize was stolen from anyone–into the United States.  See id., ¶ 13 ("Odokara believed the money was placed into her account so that Koundoul and her husband would avoid currency reporting requirements associated with the cash revenue earned by Koundoul's husband's business.  In fact, the money had been stolen from the World Bank").

Second, it should be noted that Ms. Odokara admitted to her offense conduct upon her very first contact with the FBI agents investigating this case.  On November 17, 2003, agents visited Ms. Odokara at her home in Portland, Maine.  Ms. Odokara immediately agreed to be interviewed and provided the FBI agents with a complete statement of her role in the offense.

Finally, although it is certainly no justification for Ms. Odokara's actions, the Court should note Ms. Odokara's family circumstances at the time of the instant offense.  In 2001, her father was in Nigeria and suffered a massive stroke.  See PSR, ¶ 40.  The family was desperate

for money to care for him and then, after his death in 2002, for funeral expenses.  Ms. Odokara is a person who does not handle stress well, and this situation undoubtedly undermined her judgment in her dealings with Ms. Koundoul.

## DISCUSSION

I. THE POST-BOOKER SENTENCING FRAMEWORK.

A. The Current Law of Federal Sentencing.

The Supreme Court fundamentally altered the federal sentencing landscape in United States v. Booker, 543 U.S. 220 (2005), by holding that mandatory application of the Sentencing Guidelines violated a defendant's Sixth Amendment right to a jury trial.  With this decision, the Court freed sentencing courts from the rigid, formalistic framework that existed under the Guidelines, replacing it with a system that provides judges the discretion to consider any relevant characteristic of the particular defendant or of the offense.  As the Supreme Court recently confirmed, courts are "no longer . . . tied to the sentencing range indicated in the Guidelines." Cunningham v. California, 127 S. Ct. 856, 867 (2007).  Instead, courts are "obliged to 'take account of' that range along with the sentencing goals Congress enumerated in the [Sentencing Reform Act] at 18 U.S.C. § 3553(a).'"  Id. (quoting Booker, 543 U.S. at 259, 264); see also United States v. Pickett, 475 F.3d 1347, 1351 (D.C. Cir. 2007) ("The Court's remedial opinion [in Booker] required the district court to treat the Guidelines as advisory only and as simply one factor to be considered in sentencing.").

"In the post-Booker world, the court must calculate and consider the applicable Guidelines range but is not bound by it."  United States v. Dorcely, 454 F.3d 366, 375 (D.C. Cir.), cert. denied, 127 S. Ct. 691 (2006).  The sentencing judge must determine the applicable

4

Guidelines range in the same manner as before Booker, including consideration of any policy statements issued by the Sentencing Commission and departure authority. Id. at 375 n.6. Thereafter, Booker "requires" the district court to consider the Guidelines range and the other Section 3553(a) factors. Id. at 376.

"One, but only one, of the factors a sentencing court must also consider is the sentencing range under the Guidelines." Pickett, 405 F.3d at 1352. Several courts have held that the Guidelines are entitled to no greater weight than any of the other factors. See United States v. Biheiri, 356 F. Supp. 2d 589, 594 n.6 (E.D. Va. 2005) ("No individual factor is singled out as having greater weight; instead, the richness of factual diversity in cases calls on sentencing judges to consider all of the factors and to accord each factor the weight it deserves under the circumstances."); United States v. Simon, 361 F. Supp. 2d 35, 40 (E.D.N.Y. 2005) ("[T]he Guidelines are advisory and entitled to the same weight accorded to each other factor that the Court is instructed to consider by § 3553(a)."); United States v. Ranum, 353 F. Supp. 2d 984, 986-987 (E.D. Wis. 2005) (giving equal weight to each factor listed in § 3553(a)).

As the D.C. Circuit recently held regarding the proper weight to be given the "advisory-only Guideline range":

> One might answer that the Guideline range should be considered presumptively reasonable. But that would be to confuse the standard this court and several others have adopted for appellate review with the standard to be applied by the sentencing court. A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence. To do so would be to take a large step in the direction of returning to the pre-Booker regime. Another approach, the correct one in our view, is to evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a).

Pickett, 475 F.3d at 1353 (footnote and citations omitted; emphasis added). "'If Booker's

5

rendering the Guidelines discretionary means anything,' it must give district court judges greater latitude in assessing potentially mitigating factors than they had under the Sentencing Guidelines." United States v. Brown, 449 F.3d 154, 160 (D.C. Cir. 2006) (quoting United States v. Gomez, 431 F.3d 818, 825 (D.C. Cir. 2005)). The D.C. Circuit has also recognized that mitigating evidence that is not relevant to the Guidelines calculation may well be relevant to the district court's analysis of the Section 3553(a) factors. See United States v. Ayers, 428 F.3d 312, 315 (D.C. Cir. 2005).[1] It is through the consideration of all of these relevant sentencing factors that courts ensure they reach a "just punishment" as required by 18 U.S.C. § 3553(a).

After equal consideration of all of the Section 3553(a) factors, the court has the authority (i) "to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." United States. v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005).

## II. UNDER ALL OF THE RELEVANT SENTENCING FACTORS, INCLUDING THE GUIDELINES, MS. ODOKARA SHOULD RECEIVE A SENTENCE OF PROBATION.

### A. Under the Guidelines, Ms. Odokara Should Receive A Downward Departure Based Upon The Overstatement of Her Criminal History Pursuant to Section 4A1.3.

As noted, prior to a departure (which Ms. Odokara is entitled to, see infra), Ms. Odokara' Guidelines range is 8-14 months in Zone C. Under Section 4A1.3 of the Guidelines, however,

---

[1] At the time the Guidelines were mandatory, courts were discouraged from considering factors such as the defendant's age, education and vocational skills, mental and emotional conditions, physical condition, and ties to family and the community, and charitable acts and good works. See U.S.S.G. § 5H1.1-4, 6, 11. These factors were "not ordinarily relevant" in determining an appropriate sentence and could only be considered in extraordinary situations. Post-Booker, however, these are precisely the types of considerations courts must now evaluate when imposing sentences.

the Court may grant a horizontal departure based upon overstatement of criminal history where "the court concludes that a defendant's criminal history category over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit future crimes." U.S.S.G. § 4A1.3; see also United States v. Robinson, 991 F. Supp. 1 (D.D.C. 1997) ("Under the Sentencing Guidelines, the Court may depart downward where 'reliable information indicates,' and the Court concludes, that 'a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes.'"); United States v. Spencer, 25 F.3d 1105, 1112 (D.C. Cir. 1994) (purpose of § 4A1.3 is to give court flexibility when a defendant's criminal history overstates the seriousness of a defendant's record); United States v. Collins, 122 F.3d 1297, 1304 (10th Cir. 1997) ("purpose of section 4A1.3 is to allow a district court to deviate from the otherwise applicable guideline range where a defendant's criminal history, likelihood of recidivism, or both differ significantly from the typical offender for whom the applicable criminal history category was formulated"); United States v. Martinez, 77 F.3d 332 (9th Cir. 1996) (sentencing guidelines allow for downward departure when criminal history category overstates defendant's criminal history).

    Application Note 3 to Section 4A1.3 states as follows:

> Downward Departures.–A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.

    While Section 4A1.3 is a policy statement, it is an authoritative guide for the courts to use to make departures. See Williams v. United States, 503 U.S. 193, 200 (1992). Furthermore, the

Commission's commentary to § 4A.1 itself "recognizes that the criminal history score is unlikely to take into account all variations in the seriousness of criminal history that may occur." Pursuant to the general purpose of the Commission stated in 28 U.S.C. § 991(b)(1)(B), § 4A1.3 will allow the courts to maintain "sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices."

Courts have recognized that a downward departure based on the age of the defendant at the time she committed his prior felony, and the nature of the felony committed, is appropriate. See United States v. Bowser, 941 F.2d 1019 (10th Cir. 1991). In Bowser the defendant committed his prior felonies within two months of each other while 20 years old. The court also noted in its analysis that only one mitigating factor was necessary to justify a downward departure. Id. at 1024 (citing United States v. Smith, 909 F.2d 1164, 1169 (8th Cir. 1990)).

In this case, Ms. Odokara falls within Criminal History Category II because of a single prior drug conviction from 1989, approximately twelve years before the commission of the instant offense. The circumstances of that conviction are set forth in paragraph 34 of the PSR and discussed above. As noted, Ms. Odokara was pregnant, and in desperate need of money to support her future son. Furthermore, since being released from prison in 1991, Ms. Odokara has remained free of convictions and arrests. She has risen to become one of the leaders in Maine and in the United States generally on issues of domestic violence and the empowerment of women from poor and disadvantaged backgrounds. In addition, since she has been on pretrial release in this case, Ms. Odokara has incurred no violation reports.

In sum, this situation comes remarkably close to a living version of the example set down

in Application Note 3 to Section 4A1.3, as the perfect circumstance for an overstatement departure. Given these circumstances, a downward departure one criminal history (from category to Criminal History Category II to Category I) is entirely appropriate under the Guidelines. With an offense level of 10 and a Criminal History Category I, Ms. Odokara's corrected Guideline Range would be 6-12 months in Zone B, which would allow the Court to impose a Guidelines sentence of probation.

      **B.**      **After Considering All Appropriate Sentencing Factors, Including the Guidelines Range, the Court Should Sentence Ms. Odokara to Probation.**

If the Court concludes that Ms. Odokara is entitled to a departure–or even if it does not–the correct sentence in this case under 18 U.S.C. § 3553(a) is one of probation. In this regard, Ms. Odokara respectfully urges the Court to consider a governing rationale of sentencing and specifically, "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant has not been convicted of a crime of violence or otherwise serious offense." Comment Note to 18 U.S.C. § 3551 (reciting legislative history of federal sentencing scheme). While Ms. Odokara has taken this matter extremely seriously, it results in a relatively low offense level under the guidelines. Furthermore, Ms. Odokara does extremely important work in the community on behalf of victims of domestic violence. The Court should also consider that Ms. Odokara is a single mother to her son, Michael. Michael is currently seventeen years old and in the process of trying to plan his future. It is important for Michael to have his mother with him during these times.

\* \* \*

WHEREFORE, the aforementioned background information concerning Shalome Odokara is submitted for this Court's consideration and to encourage the Court to sentence Ms. Odokara to probation.

>Respectfully submitted,
>A.J. Kramer
>Federal Public Defender
>
>_____/s/_____
>Jonathan S. Jeffress
>Assistant Federal Public Defender
>625 Indiana Avenue, N.W.
>Washington, D.C.  20004
>(202) 208-7500, ex.134