IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | Cr. No. 06-045 (EGS) |
| SHALOME ODOKARA ) | |
| ) | Sentencing Date:  March 6, 2008 |
| Defendant. ) | |

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

Ms. Shalome Odokara, by her attorney, hereby respectfully submits this Supplemental Memorandum in Aid of Sentencing.  The defense submits this supplement to provide the Court with further information concerning Women In Need Industries, the nonprofit Ms. Odokara operates in Portland, Maine.  This supplement also addresses several issues raised by the government's initial sentencing memorandum and its supplemental memorandum.

A.      **Women In Need Industries (WINI).**

As discussed in Ms. Odokara's previous sentencing memorandum, Ms. Odokara founded Women In Need Industries (WINI) in 1995.  While WINI initially focused on providing services to women around the globe, including programs dedicated to HIV prevention, in 2002 the organization refocused its energy on helping women in the United States.  Ms. Odokara and WINI have specifically focused on the state of Maine, with its changing demographic and pressing issues concerning domestic violence against women.  In order to pursue its mission, WINI relocated to Portland, Maine in 2002.

Since its founding in 1995, Ms. Odokara has been the executive director of WINI and the

driving force behind the organization. Just since relocating to Maine in 2002, Ms. Odokara and WINI have helped literally thousands of women, in everything from job placement to recovery from domestic abuse. WINI is engaged in a number of different projects designed to improve the plight of economically disadvantaged women and their families in Maine and elsewhere. *See* Ex. 1 (WINI promotional materials).

One example of the services offered to the community by WINI is "A Doorway to Hope," a drug and alcohol free transitional program designed to help reduce the barriers faced by women coming out of incarceration. *See id.* ("A Doorway to Hope"). As part of the program, WINI provides a six bed transitional house that offers women a safe and comfortable room in a supportive environment for up to one year. During their stay, the tenants receive individualized case management that includes: (1) treatment plans, recovery skills, and relapse prevention; (2) mentoring; (3) skills for employment; (4) transitioning plans to obtain independent living including money management; (5) anger management; and (6) parenting workshops. "A Doorway to Hope" is just one example of the many services WINI provides to women in its community.

* * *

Several individuals have written the Court regarding Ms. Odokara's passionate commitment to helping the poor and powerless. Chinyere Okafor is the Chair of the Board of Directors for WINI. Ms. Okafor, a professor of English and Women's Studies at Whichita State University in Kansas, has known Ms. Odokara for her entire life. Ms. Okafor writes of Ms. Odokara's "devotion and passion for the underprivileged; a passion that eventually led her to founding an organization devoted to helping people in need." Ex. 2 (email from Chinyere

Okafor).

Ms. Okofor provides the Court with a description of WINI's work under Ms. Odokara's leadership.

> [WINI] provides services and helps communities build bridges; whether they are refugees trying to understand and navigate the American system or women-in-transition trying to gain personal independence and economic self-sufficiency in order to become full contributing members of society. It also serves as a resource hub that provides up-to-date information about women in transition. Shalom Odokara is at the center of all these, over-exerting herself and even her personal resources because like many non-profit organizations of these times, WINI is frequently in need herself. However, Shalom has the charisma for advocacy and this has attracted Women-In-Need angels who sometimes volunteer for her organization.

*Id.*

Similarly, Michael J. Waxman, Esq., an attorney in Maine who occasionally represents Ms. Odokara and WINI on legal matters, and who is familiar with WINI's beneficial work in the community, writes:

> I have known Ms. Odokara for approximately 5 years. I have represented her in a number of different matters, and I have had the privilege of getting to know her and her son, Michael, socially. I have great respect and admiration for Ms. Odokara as a human being, as a business woman, and as a mother. She exudes integrity in everything she does. Her work and her life are about helping people who need help, who lack a voice, who are often overlooked by those in power. She is tenacious and principled. She is a very warm and nurturing mother. She is intelligent and hard working.

Ex. 3 (letter to Court from Michael J. Waxman, Esq.).

In his sentencing letter, Ms. Odokara's 17-year-old son, Michael, describes the kind of life Ms. Odokara leads in order to serve victims of domestic violence, her clients.

3

> Being an executive director of a non-profit for women (Women In Need Industries) means her waking up at one in the morning from an emergency call or one of her clients. She loves her work, her clients, and in a way, knows that this is a venue for her to give back for the mistakes she has made in her past. I truly believe that her experiences and mistakes play an important [role in] her sensitivity to people in need or people who made mistakes in their lives. She is a great role model, not because she is my Mom but because of her work and how she lives her life now.

Ex. 4 (letter to Court from Michael Odokara).

B.   **The Government's Supplemental Memorandum In Aid of Sentencing.**

The government's most recent filing raises two issues with respect to Ms. Odokara's finances. Neither issue has merit. First, the government states that, based on information it has reviewed concerning a December 12, 2005 investment of Ms. Odokara's own savings in WINI, it believes Ms. Odokara "may have additional financial resources to pay restitution and/or the information about her financial status in the pre-sentence report may be inaccurate." Gov. Mem. at 2.

The government's new "belief" is ill-founded. Strangely, the government attempts to use against Ms. Odokara that in December 2005 she "invested her own savings in land" for a day care center for economically disadvantaged mothers. Gov. Supp. at 2 (emphasis in original). Ms. Odokara does not own these properties; WINI does.[1] Ms. Odokara's only role in the purchase in her individual capacity was to make an interest-free loan to WINI of $7,500, in order to purchase the properties. *See* Ex. 5 (Promissory Note signed and authorized by Chinyere Okafor, Chair of Board of Directors of WINI, to Shalome Odoakra for $7,500).

---

[1] Defense counsel has obtained the land purchase contract between WINI and the land's previous owner. Counsel will of course furnish these materials to the Court or the government upon request.

The government refers to WINI as "Ms. Odokara's company," Gov. Supp. at 2, as if WINI is some corporate shell through which Ms. Odokara attempts to make a profit through private financial transactions. That is a mistaken impression, and exemplifies a larger failure by the government in this case to recognize the good works that Ms. Odokara and WINI perform on a daily basis in Maine, with very limited resources. Ms. Odokara made the loan to WINI not because she has discretionary income to throw around (which she clearly does not), but because she believes so strongly in WINI's mission of helping others. In any event, while Ms. Odokara may someday receive back the $7,500 in principal that she loaned to WINI in 2005, such a return would be years away, and is unlikely to happen at all. It is impossible to see why Ms. Odokara's financial sacrifice for WINI in 2005 should lead the Court to impose a fine in this case, as the government's pleading suggests.[2]

The second issue raised by the government is Ms. Odokara's salary. Ms. Odokara reported two figures to the Probation Office: (1) an annual salary of $32,000; and (2) take home pay of approximately $800/month, or about $12,000 a year. Both figures are entirely accurate. While Ms. Odokara is supposed to receive $32,000 a year under her agreement with WINI, in fact she receives only $800 month because of WINI's limited resources and budget. Because Ms. Odokara believes wholeheartedly in the work that WINI does, she performs her job for substantially less than her promised salary.

The government also insinuates that Ms. Odokara may have under-reported her salary

---

[2] The plea agreement is clear that Mr. Odokara is already jointly and severally responsible for $108,000 in restitution. And as the government has been unable to make any progress in apprehending Ms. Koundoul, it appears that Ms. Odokara may have to pay the full amount.

because WINI has "an operating budget of '*at least* $4000,000' and a staff of three employees and eight consultants." Gov. Supp. at 3 (emphasis in original). The aforementioned figures were reported in an article from "Mainebiz" magazine submitted by the defense as part of Ms. Odokara's original Memorandum in Aid of Sentencing. While the defense is unclear as to the government's point on this issue, it should be noted that WINI's "$400,000 operating budget," in fact includes the $280,000 value of the land in Auburn. In addition, the employees and consultants work for WINI largely on a *pro bono* basis. The reality is that WINI does a tremendous amount of good with very little money, largely due to Ms. Odokara's personal sacrifices. *See, e.g.*, Ex. 2 (email from Chinyere Okafor) ("Shalom Odokara is at the center of all these [activities of WINI], over-exerting herself and ever her personal resources because like many non-profit organizations of these times, WINI is frequently in need herself.").

C. The Government's Sentencing Position

Despite Ms. Odokara's good works in the last 15 years, as well as the clear applicability of U.S.S.G. § 4A1.3 (overstatement of criminal history, *see* Defendant's Motion for Downward Departure), the government asks this Court to remove Ms. Odokara from her teenage son, from her community in Maine, and from her important work as a provider of services to battered and disadvantaged women, and imprison Ms. Odokara for a period of five months. The government's sentencing position can only be seen as shortsighted; not just for Ms. Odokara and her family, but for the hundreds of women whom Ms. Odokara helps and protects on a daily basis through her work.

## **CONCLUSION**

**WHEREFORE**, the defense respectfully submits the aforementioned background information concerning Shalome Odokara in support of its request that the Court sentence Ms. Odokara to a term of probation.

                                          Respectfully submitted,
                                          A.J. Kramer
                                          Federal Public Defender


                                        _____/s/_____
                                          Jonathan S. Jeffress
                                          Assistant Federal Public Defender
                                          625 Indiana Avenue, N.W.
                                          Washington, D.C. 20004
                                          (202) 208-7500, ex.134