**EXHIBIT 2**



**PHAROS HOUSE**          5 Grant Street,
Portland, ME 04101
(207) 774-6021   Fax (207) 774-5963

# Resident Agreement

## GENERAL

I understand and accept the following rules and principles of Pharos House:

Pharos House is a work release program and **all** residents are required to work on a full time basis unless they are medically certified as disabled.
**Accountability** is an overriding principle at Pharos House. Rules and regulations are directed at ensuring accountability.
Pharos House accepts referrals from the Federal Bureau of Prisons (FBOP) and the United States Probation Office (USPO). Although similar, rules and regulations for residents differ depending on the referral source. Although we strive for consistency concerning social privileges and other House programs, all cases are handled on an individual basis and the specifics of each case will ultimately determine the extent of a resident's social privileges and other program parameters.
Insofar as is possible, residents are treated equally without regard to their race, religion, sex, national origin, disabilities or political views.
Residents are never subjected to corporal or unusual punishment nor are they humiliated or mentally abused by staff. No punitive actions may interfere with the daily functions of living such as eating or sleeping.
Pharos House is an **ALCOHOL AND DRUG FREE FACILITY** and any alcohol or drug use will result in termination from the program.
Pharos House is a **NON-SMOKING FACILITY**. Residents may smoke in the backyard **only**. Any violations are considered serious and will result in disciplinary action.

## HOUSE & COMMUNITY

I understand and will behave according to the following house and community standards:

Residents may have personal belongings not otherwise prohibited in quantities that will neatly fit into their assigned closet, bureau, and nightstand space. Storage in cardboard boxes, paper bags or plastic bags is prohibited.
Weapons of any sort (including pocket knives) are prohibited.
No resident is permitted to possess **contraband** which is defined as any article prohibited by law, alcohol, illegal drugs, intoxicating substances, containers with residue of any prohibited substance, any cosmetic or toiletry containing alcohol, any flammable item, anything in pressurized containers, incense, and substances containing steroids or Creatine.
Room searches will be conducted periodically without warning to control contraband and recover lost or stolen property. If ownership of contraband found in a room is unclear, all occupants of the room will be held accountable and be subject to disciplinary action.

1

Pharos House cannot be held responsible for any items lost or stolen. Residents should not leave money or other valuables lying around. Pharos House will **not** hold money or other valuables for safekeeping.

Pharos House will not store property except in cases where the resident is returned to custody or removed for medical treatment. In these instances, the resident's designee must pick up property within 30 days or it will be discarded.

Residents may not use office telephones except for emergencies and to schedule medical and legal appointments. Three public coin phones are provided for residents' use.

Residents will **never** be alone and unattended in the front office, a staff office or other off-limits areas.

Residents are prohibited from visiting sleeping quarters of other residents.

Physical contact between residents is prohibited.

Appropriate attire is required in the public areas of the house at all times. Residents should not sleep uncovered because male or female staff members routinely conduct House inspections.

Residents cannot go to social activities together and they may never visit past residents who are now in the community.

Residents may have access to the Courts and to their legal counsel. Access to the media requires prior approval from the Pharos House Director (the Director) and the FBOP Community Corrections Manager (CCM). Residents may not be interviewed or photographed without specific approval from the Director and CCM.

Televisions, radios, stereos, and other audio/video equipment are allowed in rooms **only** with prior approval of the Director. The volume must be kept low so that others are not disturbed. Headphones are strongly encouraged.

The posting or display of pornography or hate materials is prohibited.

The showing of X-rated tapes or DVDs is prohibited.

Except on weekends and holidays, the upstairs television is not to be used from 08:00 to 16:00.

Any report of possible criminal behavior by a resident will be referred to the appropriate law enforcement agency for investigation and appropriate action.

No food or drinks are allowed on the 2nd or 3rd floors. Drinks and dry snack foods are allowed in the living room and basement TV room. All meals and wet foods must be consumed at the dining room table. Food may be ordered or brought in **only** on weekends or holidays.

Lounging on furniture or sleeping in the TV rooms or other common areas is **not** allowed. Feet should be on the floor – **never** on furniture.

The kitchen is **off limits** except for meal times (5:30 – 8:00, noon – 13:00 and 17:00 – 18:00) and evening snacks (19:00 – 23:00).

MAIL:

Mail is received and dispensed through the front office. Residents have their own mailbox and no resident shall use or tamper with another resident's mailbox for any reason.

**All** mail may be opened and inspected for contraband.

Correspondence with offenders in other correctional institutions is **not** allowed unless permission is granted by FBOP.

After leaving Pharos House, **First Class** mail and packages will be forwarded for 30 days if an address is available. Otherwise it will be returned to the sender.

VISITORS:

Visiting hours are from 18:00 to 23:00 Monday through Friday and 10:00 to 23:00 on Saturday, Sunday and Holidays.

Special visits may be authorized for visitors who must travel long distances; for residents or visitors who work odd shifts; or for attorneys or social service representatives.

The number of visitors and the duration of visits may be limited by the Shift Monitor to avoid overcrowding.

All visitors **must** be previously approved by a Case Manager and be listed on a resident's visitor list.

Visitor's must present a picture ID and register on their first visit. They must sign-in and sign-out on every visit.

2

Visitors **are** allowed in the dining/living room, the main floor restroom and in the back yard with Shift Monitor permission. In an overflow situation only and with Shift Monitor approval, residents and their guests may use the basement TV room. Visitors are **not** allowed in the kitchen, upstairs or in resident's rooms at any time for any reason.

Residents and their guests are **never** permitted to use the front porch area for any purpose other than to enter or exit the building.

Displays of affection between residents and visitors are limited to a kiss on arrival and departure and the holding of hands during the visit. No other physical contact is permitted.

Anyone under the age of 18 must be in the company of a parent or legal guardian and must be supervised at all times during the visit.

No visitor will be admitted who, in the opinion of the Shift Monitor, is under the influence of alcohol or drugs.

Visits can be terminated at any time if visitors are not conducting themselves in a responsible manner or are interfering with the orderly running of the facility.

Any visitor who has caused problems for the resident being visited, or who fails to obey House rules, will be denied future visits.

Anyone convicted of a felony must have the approval of the Director before they may visit. The USPO must also approve visitors to Probation residents.

Visitors may have tea or coffee but they may **not** eat House food. Food may be brought in on weekends but it must be eaten in the dining room.

CHORES:

In addition to keeping their rooms neat and clean on a daily basis, residents are assigned weekly and daily chores. Residents must do assigned chores, request that a staff person check the chore and correct any deficiencies that are pointed out. Both the resident and staff person must initial the appropriate chore sheet to confirm that the chore is done. It is the **resident's** responsibility to do the chore **and** to make sure that the chore sheet is initialed.

Daily chores **must** be done by 23:00 and weekly chores **must** be done by Sunday. Chores are rotated every Monday.

Residents are expected to clean and pick up after themselves, especially in the kitchen area. All glasses and dishes must be washed and placed in the sanitizer. The sanitizer is **not** a dishwasher and dishes must be clean before being placed in the sanitizer.

Once a week, a resident is required to vacuum and mop their personal living area. This must be done by Friday and must be approved and initialed by the Shift Monitor.

Residents are not permitted to have in their rooms: paper bags, cardboard boxes, plastic bags, trash, extension cords, multi-plug adaptors, flammable items, aerosol cans, or other items that could be considered a potential fire or safety hazard

Additional chores may be assigned on an as needed basis.

## **PLAN**

As soon as possible after my arrival, I agree to develop a Program Plan with my Case Manager that establishes goals to address identified need areas and includes a time schedule for completion. This Plan will be approved and signed by my Case Manager and a representative from the US Probation Office (for all cases that are or will be on supervised release). Until this plan is approved, I will be allowed to leave the House **only** for employment related reasons.

It is **my** responsibility to schedule and attend a meeting with my Case Manager on a weekly basis to review the progress on my plan and to revise or amend plan goals.

So that the admission and orientation process will not be interrupted, I shall make no plans for social or other activities through my **first full day** at Pharos House.

I know that **Case Manager assignments will** **not** **be changed** and it is my responsibility to work out issues of conflict with my Case Manager. I may ask the Director for help with this.

## ACTIVITIES & ACCOUNTABILITY

I understand that activities must be purposeful and relate to my Program Plan. I will not request approval for an activity unless I can provide a full address and phone number where I can be reached. I understand that non-specific locations such as parks, beaches, shopping malls, or sporting events will **not** be authorized.
Although social activities are important, I realize that activities relating to employment, mental or physical health, substance abuse, financial responsibility, and family reunification take precedence and must receive my primary attention.
I understand that social activities are a **privilege** and are conditional upon clear conduct, good room sanitation, timely completion of chores, adequate program participation and timely subsistence payments.
If I am a USPO resident, I understand that I will be allowed **NO** social activities during my first 30 days at Pharos House. I also am aware that any social privileges including those noted elsewhere in this *Resident Agreement* are subject to the approval of my Probation Officer.
I am allowed the privilege of one hour of recreation time at the YMCA each day.
Once I am employed, I may request up to three hours of social activity time during my workweek (may be used for extra time at the YMCA). I may earn extra social/recreation time through approved program activities.
I understand that activities on my days off will be determined on a case by case basis with more latitude given to residents who are not able to go on Pass for other than disciplinary reasons.
Unless excused for work or illness, I will attend the Resident Meeting that is generally held during the first week of the month from 18:30 to 19:00.
Whenever I am approved to go to a store or restaurant, I will produce a dated receipt from the store/restaurant when I return for the Shift Monitor to copy.
I cannot go from work to a social activity without first returning to the House. Similarly, I may not go from a social activity directly to work.
I may not possess a communication device (beeper, pager or cellular phone) unless approved by the Director (or USPO for Probation cases). If approved, I may use the device **only** for employment related purposes and I must turn the device into the front office whenever I am not working. I can **never** use a cellular phone for accountability purposes.
Whenever I leave Pharos House for an activity, I will always call upon my arrival at the approved destination. If a phone is not available at that location, I will make the call from the nearest available phone. **Every time I arrive at a new location, I will call Pharos House** so that my location can be verified.
I will immediately report **any** contact with a police officer to the Shift Monitor on duty.

## ITINERARY & SIGN-OUT

Unless other arrangements are made with my Case Manager, I will fill out a weekly itinerary of proposed activities. I will supply full addresses and telephone numbers where I can be reached.
By Wednesday evening, I will submit my weekly itinerary to my Case Manager for the period covering the following Saturday through Friday.
**I agree to sign-out/in each time I leave or return to Pharos House** I will provide full addresses and phone numbers where I can be reached on the sign out sheet, the date and time I am leaving or returning, and I will make certain that a staff member has approved and initialed my entry. I will not sign-out my departure time until I am actually ready to leave.
I must go directly to/from approved destinations and I may not stop at any other location.
I will indicate the reason for an activity on both my itinerary and sign-out sheet. This reason **must** be consistent with my Program Plan.

I may sign-out to the back yard with Shift Monitor approval between 06:00 and 21:00. In addition to entering the time on the appropriate sign-out sheet, I will **always** notify the Shift Monitor when I leave and return.

I will abide by a curfew from 21:00 to 6:00. I understand that exceptions to this will only be considered for work, medical or treatment reasons.

I realize that Shift Monitors will **not** allow me to leave the House for an activity that is not on my itinerary and approved by a Case Manager with the following exceptions. Without it being on my itinerary, the Shift Monitor **may** allow me to sign-out to the YMCA for one hour per day, for a brief trip to the Big Apple, to the US Probation Office when required, or to the Post Office once a week. **All** other activities must be approved and on my itinerary.

I need to plan ahead if I wish to leave the house on weekends or Holidays by obtaining approval for desired activities from my Case Manager. Except in the case of an emergency, I will **not** ask a Shift Monitor to seek approval for an activity that I failed to get approved on my itinerary.

I may not sign-out for more than six consecutive hours other than for work, Pass or furlough.

Except for Pass or furlough, I may **never** be absent from the House for more than 12 consecutive hours **for any reason.**

## EMPLOYMENT

Pharos House is a work release program and I understand that I am required to obtain and maintain full-time employment (40 hours per week) in order to remain a resident in good standing. I must make reasonable efforts to find a job on a daily basis and I must secure employment within 15 calendar days.

I will be up in the morning by 08:00 with my bed made and room straightened. If not employed, I will be out of the House by 08:45 to look for a job. I will make at least three job contacts each day. If requested, I will provide my Case Manager with written verification of my job search efforts.

I understand that I may not sign out to look for work after 16:00 on weekdays or on weekends unless I have an employment appointment scheduled and approved by my Case Manager.

I must inform my employer that I am in a work release program at Pharos House and I understand that my Case Manager will contact my employer on a regular basis.

Before I begin work, my Case Manager must approve my job. I cannot resign or change employment without prior permission from my Case Manager.

If I am asked to work overtime, I will call the Shift Monitor for permission and I will have my supervisor available to confirm overtime hours. I may not work overtime without staff approval.

If I have a history of alcohol abuse, I will not seek employment in an environment where alcohol is readily available.

I agree to work everyday unless I am sick or excused from work for some other reason by my Case Manager. If I miss work due to illness, I will seek medical attention if requested to do so.

I understand that work does **not** excuse me from other program activities such as *Truthought* or substance abuse treatment appointments. I will never miss scheduled program activities because of work without prior permission from my Case Manager.

I may not work more than 60 hours per week.

## FINANCIAL

I agree to pay 25% of my gross weekly income towards my subsistence at Pharos House (rounded **down** to the nearest **whole** dollar). I will pay subsistence with a money order or a cashier's check. I am aware that only Case Managers and the Administrative Assistant are authorized to take my subsistence payment.

I understand that my final subsistence payment may be substantially larger than my average weekly payment because my last payment is made in advance of my release date and includes any paycheck holdback period. I will discuss my final subsistence payment with my Case Manager **at least** three weeks before my release date.

I will pay subsistence whenever I receive income and I will produce a pay-stub from my employer each payday showing hours worked, gross earnings, itemized deductions and net pay.
I realize that if I should fail to pay subsistence in a timely fashion, I may lose furlough or Pass privileges and/or face disciplinary action that could lead to my return to custody.
I understand that failure to fully disclose **all** income received from **any** source while at Pharos House **will** result in disciplinary action.
I agree to review my financial situation with my Case Manager, establish a budget, open a bank account, and make regular deposits in an amount approved by my Case Manager.
I agree to make payments as outlined in my Program Plan including, but not limited to, a fine, restitution and child support.
I will not gamble (includes lottery), borrow or lend money, pay or give money to another resident for any reason, or purchase any merchandise or service on credit while I am a resident at Pharos House.
I will not apply for any type of credit nor will I enter into any contract without prior approval of the Director.
I will not make a purchase over $25 without prior discussion with my Case Manager.
I understand that I am responsible for **all** of my medical or dental expenses.

## HEALTH & TREATMENT

If I have any history of alcohol or drug use, I will attend at least one Narcotics Anonymous (NA) or Alcoholics Anonymous (AA) meeting each week.
Unless exempted by my Case Manager, I will actively participate in and successfully complete *Truthought Corrective Thinking*, the Pharos House cognitive skills program.
I agree to participate in any program to meet an identified need including, but not limited to, mental health counseling, anger management, financial management, parenting skills or basic adult education.
I realize that, depending on community resources, I may have to pay for some or all of such program costs.
If a requirement or recommendation is made by FBOP or USPO for me to enroll in their substance abuse treatment program, I agree to actively participate in and successfully complete that program.
I will turn in all prescribed medications to the front office where staff members will dispense them. Except as noted below, I may have over the counter medications in my possession as long as they are **not** in capsule form.
I understand that I will not be allowed to take any prescribed controlled or narcotic medication unless I obtain a letter from my physician or dentist saying he or she is fully aware of my alcohol and drug use history and my status as a felony offender at Pharos House.
I am not permitted to eat any foods containing poppy seeds and I may not possess or use any dietary or health supplements containing steroids or Creatine  I may not use a cough medication, mouthwash, toothpaste, or other item used or taken orally that contains alcohol.
I will cooperate with an alcohol breath test or a drug urine test whenever requested by a staff person. Urine specimens must be collected in the presence of a same sex staff member.  I must remain within plain view of a staff person until the specimen is produced.
I understand that it will be considered the same as a positive test if I refuse to take a breath test or give a urine specimen, or if I am unable to produce a urine sample within two hours from the time it is requested.  This would subject me to disciplinary action and the return to custody.
I know that substance abuse testing is scheduled on a random basis without regard for work schedules or social activities.  I will **always** cooperate with testing whenever I am requested to do so and I understand that I will **never** receive advance notice of a drug or alcohol test.
If I sustain an injury, become ill or require acute medical or dental care, I will seek appropriate treatment in order to remain in the program.  I understand that the staff at Pharos House have the responsibility to ensure the safety and well being of all residents and cannot allow me to jeopardize my health or the health and safety of others.
It is my responsibility to seek and follow medical advice for serious health problems.  Failure to do so on my part may be deemed as evidence that I am not ready to responsibly care for myself in the

community. I realize that for my own protection, such a failure could lead to my return to custody or termination from the program (USPO residents).

## PASS

BOP Residents - I understand that I am eligible to apply for a 48 hour Pass (72 hours on a three day holiday weekend) during my off-work days if I have been a resident in good standing for at least a week. USPO Residents – I understand that I am **not** eligible for any type of home Pass during my first 30 days at Pharos House. Thereafter, at the discretion of my Probation Officer, **I may** be eligible for Pass during my off-work days. I know that Pass privileges may be graduated over time contingent on positive program performance. <u>For instance</u>, I may be allowed daytime trips only between 30 and 60 days, 24 hour Pass from 60 to 90 days and 48 hour Pass after 90 days. I also realize that depending on my circumstances, I could be allowed **no** Pass time at all.
In order to be eligible for Pass, I am aware that I must be employed full time, have no disciplinary issues pending and be in compliance with the rules and regulations of Pharos House.
I may apply for only one Pass site during my time at Pharos House that generally will be the address to which I intend to be released. This site and all approved Pass itinerary activities must be within 100 miles of Portland.
I understand that before a Pass can be approved, an on-site visit must be made and phone services of an approved type must be verified (basic service with no additional services besides *call waiting*). I know that I may not have an answering machine or a computer modem active on the phone line at my Pass site.
I will have a Pass application completed and submitted no less than three days before the requested Pass is to begin so that it may be reviewed and approved by my Case Manager and the Director. No changes can be made to my Pass once I have left the House on Pass.
I am aware that weekend passes for purely recreational purposes are **not** allowed.
I know that **no** social activities will be approved for my first Pass.
After my first Pass, I may **request** approval for **no more than** the following schedule of activities: planned medical appointments; religious services (if I have a prior pattern of attendance); one AA/NA meeting per day; and two social activities per Pass. I understand that this schedule represents the **maximum** allowed level of activity and that my Case Manager may not approve some of these activities.
Any activity I apply for will be within 30 minutes travel time from my Pass address and no single activity shall exceed six hours including reasonable travel time.
I know that standard call-in procedures as outlined under *Activities & Accountability* apply to all Pass itinerary activities and I am aware that I will receive random phone calls from Pharos House staff for the purposes of accountability.
It is my responsibility to make sure that the Pass site phone is available for accountability calls and I understand that my Pass will be revoked and I will be required to return to Pharos House within one hour if a call reaches an answering machine, if I cannot be reached within 30 minutes, or if I am not immediately available when the phone is answered by someone else.
I will apply for a furlough to travel to any approved destination over 100 miles from Portland or for any stay away from Pharos House in excess of 48 hours. Except in the case of an emergency, I must apply for a furlough **at least** two week in advance.

## HOME CONFINEMENT – BOP Residents ONLY

I know that Home Confinement is a program where I may be permitted to live in my own home and work at my place of employment while continuing in official detention at Pharos House. I may not begin Home Confinement until my FBOP certified eligibility date (10% date).
To be eligible for Home Confinement, I must have a plan for residence and employment that has been approved by my Case Manager and a representative of the USPO.

7

I may apply for Home Confinement after I have been a resident in good standing for a **minimum** of 14 days. I understand that the application may take up to two weeks to process.
I realize that a proposed Home Confinement address over 50 miles from Portland will be considered subject to availability of approved monitors in the area. If not eligible, I still **may** be considered for Home Confinement on Electronic Monitoring under the supervision of the USPO.
My application for Home Confinement is submitted by my Case Manager with concurrence from the USPO and requires approval by the Director and the FBOP CCM.
I understand that rules governing Home Confinement include, but are not limited to:
Curfew is from 21:00 to 06:00.
One check-in phone call is required daily.
Full time employment must be maintained unless medically disabled.
Subsistence of 25% of gross earnings must continue to be paid in a timely fashion.
Two in-person reports to Pharos House are required each week. One report shall be scheduled and one shall be at the discretion of staff on a call-in basis.
Continued cooperation with ongoing programs such as *Truthought* or substance abuse treatment is mandatory.
Weekly itineraries must be submitted and approved in advance.
A call-in is **not** required when making location changes so long as the changes comply with locations and times on an approved itinerary.
I understand that any violation of Home Confinement rules may result in disciplinary action and my immediate return to residence at Pharos House **or my return to a Federal institution** because there is no requirement to reserve bed space for persons on Home Confinement.
Phone service requirements for Home Confinement are the same as for *PASS* (see above).

## DRIVING POLICY

I understand that I cannot drive a motor vehicle without **prior written permission**. I may submit an application to drive to the Director **only** if driving is **essential** to maintain employment. [Driving privileges for residents under the jurisdiction of the USPO will be determined by their Probation Officer and Case Manager on a case by case basis.]
In order to apply for permission to drive, I will need to present to my Case Manager: a valid driver's license; a signed and notarized letter from the owner of the vehicle I will be driving giving me permission to use the vehicle; a copy of the vehicle registration; proof of insurance; and, in some cases, a letter from my employer attesting to the need to drive in order to maintain employment.
Once approved to drive by the Director, I may drive to and from work, for specified purposes on the job, and to and from Pharos House and my Pass/home confinement site. **I do not have permission to drive for any other reason.**
If I am approved to drive, I will always surrender my car keys to the Shift Monitor when I return to the House.
I understand that any vehicle I am approved to drive is subject to search at any time by staff.
I know I may **never** ride with a resident driver.
I may not purchase a motorized vehicle without the prior approval of the Director.

## DISCIPLINARY PROCESS -- BOP Residents

I understand that the disciplinary process outlined below will be initiated if I violate any of the rules and regulations of Pharos House.

Upon arrival at Pharos House, all residents will receive a copy of the FBOP *Prohibited Acts and Disciplinary Severity Scale (Prohibited Acts)* which describes behaviors which may result in disciplinary action and which outlines possible sanctions for these actions.
Minor violations committed while residents are adjusting to the Pharos House environment are usually resolved with a **verbal warning** from the staff person observing the violation.

8

Continued minor violations will result in the next step in the disciplinary process that is a written warning that is usually prepared by the staff person observing the noncompliant behavior. The written warning is given to the resident and the Case manager to discuss and resolve.

Sanctions are **not** imposed for verbal or written warnings.

If minor violations continue after being warned or if a more severe violation occurs at any time, an **Incident Report** will be prepared. Any staff member learning of a rule infraction may prepare an Incident Report and a copy will be presented to the resident within 24 hours.

Whenever possible, an Incident Report will be resolved **informally**. Unlike warnings, informal resolution of an Incident Report will include one or more (delete "minor") sanctions including, but not limited to, community or room restriction, loss of Pass, extra chores, community service or loss of visitor privileges. Informal resolution can only take place with the agreement of the resident and the Director.

Alleged violations involving the use of drugs or alcohol, or any behavior that creates a threat to residents, staff or community will **not** be resolved informally. In those cases the US Marshal will remove the resident from the facility pending disciplinary action.

Greatest severity incidents can never be handled informally and must always be forwarded to the FBOP for review and disposition.

If the Director decides against informal resolution, the Center Disciplinary Committee (CDC) will conduct a formal hearing. The hearing will ordinarily be conducted within one to three working days after the resident receives a copy of the Incident Report.

If a resident is not available for an in-person hearing, a hearing in absentia will be conducted following the procedures outlined herein.

The Director will appoint an impartial staff person to investigate the alleged violation and provide a written report of the investigation findings to the CDC.

A resident may request a staff person who is not otherwise involved in the hearing process to be a **staff representative** to assist in preparing for the CDC hearing. The staff representative will become familiar with the issues of the alleged incident, will answer questions the resident may have about the disciplinary process and will be present at the CDC hearing to help in the presentation of the resident's defense. The staff representative will help the resident to contact witnesses or obtain documentation that could benefit the resident's case.

A resident has the **right** to be present at the CDC hearing unless he/she would present a security risk or if he/she is no longer in the Portland area. During the hearing, the resident has a **right** to make a statement in his/her defense, present documents and have witnesses testify. Neither the resident nor staff representative shall be present during CDC deliberations following the hearing.

CDC deliberations first decide whether the act(s) alleged in the Incident Report were committed using the "greater weight of the evidence" standard. If it is decided that the act(s) occurred, then appropriate sanctions are determined.

If the CDC finds that the act(s) alleged in the Incident Report were committed, it has the authority to impose any sanctions authorized in the *Prohibited Acts*.

The Community Corrections Manager (CCM) will review the information submitted by the CDC to ensure that disciplinary procedures were correctly followed before the Disciplinary Hearing Officer (DHO) makes a final decision to impose a sanction.

The DHO will advise the Center of their decision in writing and provide a copy of the CDC report for the resident within five, but no later than eight, working days.

At the time the resident is advised of the disciplinary action, the resident will also be advised that they may contest the decision by writing to the Regional Director within thirty calendar days from the date the disciplinary action was imposed by the CCM. If the resident is to be transferred to a Federal Institution, then the staff shall advise the resident of the Administrative Remedy procedure upon arrival at the institution and file the complaint with the Warden.

## **DISCIPLINARY PROCESS – USPO Residents**

I understand that the disciplinary process outlined below will be initiated if I violate any of the rules and regulations of Pharos House.

Minor violations committed while residents are adjusting to the Pharos House environment are usually resolved with a **verbal warning** from the staff person observing the violation.

Continued minor violations will result in a **written warning,** usually prepared by the staff person observing the noncompliant behavior. The written warning is given to the resident and the Case Manager to discuss and resolve.

Sanctions are **not** imposed for verbal or written warnings.

If minor violations continue or if a more severe violation occurs at any time, an **Incident Report** will be prepared. Any staff member learning of a rule infraction may prepare an Incident Report and a copy will be presented to the resident within 24 hours of staff becoming aware of the incident.

A staff person not directly involved in the Incident Report will conduct an Investigation (Part II of Incident Report).

All Incident Reports will be reviewed during an in-person meeting with the resident, Probation Officer and Case Manager. At this meeting, the resident may remain silent; present a verbal or written statement or present documentary evidence. Following that meeting, the Probation Officer and Case Manager will determine and impose an appropriate **sanction** including, but not limited to, community or room restriction, loss of Pass, extra chores, community service, loss of visiting privileges or termination from the Program. Termination from the Program requires the approval of the Director.

If the resident is to remain in the Program, the Probation Officer will issue a **Written Reprimand/Notice of Action**. Prior warnings and Incident Reports will be noted in this report and the resident will be placed on notice that continued misconduct may be used as grounds for removal from Pharos House, revocation of supervision and possible incarceration. The Probation Officer and the resident will sign this Reprimand/Notice.

Progressive disciplinary measures may not always be possible if the resident's misconduct is of such a nature that it undermines the integrity of the Program or if the resident's behavior threatens the safety of other residents, staff or members of the community. In these situations the Director will advise Probation officials that the resident is to be immediately terminated from the Program.

## **AGREEMENT**

I understand that the information presented in this *Resident Agreement* is a summary of selected rules and regulations of Pharos House.
I am aware that the *Resident Manual* is a separate document that contains additional information I need to know to ensure my success at Pharos House including, but not limited to:
Emergency Procedures
Categories of Residents
Staff & Resident Relations
Recycling Information
Hazardous and Toxic Materials
Food and Food Services
Inmate Property
Sexual Abuse/Prevention Policy
Disciplinary Action
Grievance Policy and Appeals Procedure
FBOP *Prohibited Acts*
I have read the *Resident Agreement* **and** the *Resident Manual* and I have had any questions answered to my satisfaction by my Case Manager. I understand the information contained in the *Resident Agreement* and the *Resident Manual* and I voluntarily agree to abide by the terms, conditions, rules and regulations contained therein.
I understand that any exceptions to the procedures, rules and regulations outlined in the *Resident Agreement* and the *Resident Manual* require the approval of a Case Manager and in some instances the Director and/or CCM.
I understand that I may be returned to the custody of the FBOP at the request of the Director if I cannot accept the terms of the *Resident Agreement* and the *Resident Manual*; will not abide by the rules and regulations of Pharos House; fail to adjust to program requirements; or present individuals in the House or community with a potentially dangerous situation.
I have read, understand, and have received a copy of the FBOP *Prohibited Acts*.


_____          _____
Resident                                 Date



_____          _____
Pharos House Case Manager                Date


••*To be reviewed with Case Manager **after** arrival at Pharos House*••

11

## Approval By:

_____     _____
**David Dwyer**                       **Date**
Community Corrections Manager
Federal Bureau of Prisons
Boston, MA


_____     _____
**Robert E. Feener**                  **Date**
Director, Pharos House
Portland, ME

12

# ACKNOWLEDGEMENT

I have read and understand this *Resident Agreement*. I have had an opportunity to review it with my FBOP Case Manager or USPO Probation Officer and I voluntarily agree to accept the terms and conditions contained therein.

Printed Name _____

| | |
|---|---|
| _____ | _____ |
| Signature | Date |
| | |
| _____ | _____ |
| FBOP Case Manager or USPO Officer | Date |

# A signed copy of this page must be returned to Pharos House as a condition of acceptance.

Revised 7/24/03

13