UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.  06-00045 (EGS) |
| | : | |
| SHALOME ODOKARA, | : | |
| | : | Sentencing Date: March 31, 2008 |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S SECOND SUPPLEMENTAL MEMORANDUM
IN AID OF SENTENCING**

Pursuant to this Court's request, the United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this Second Supplemental Memorandum in Aid of Sentencing.

**I.   BACKGROUND**

On March 6, 2008, this Court suggested an alternative sentence to imprisonment for defendant Odokara, and the defense requested an opportunity to address that possibility.  On March 15, 2008, the defense submitted its Second Supplemental Memorandum in Aid of Sentencing and supporting materials.  The government stands by its earlier representations and sentencing recommendation, and is filing this motion to merely respond to certain representations made by the defense in its most recent filing.

**II.   ADDITIONAL INFORMATION AND RESPONSE**

   A.   Women in Need Industries, Inc.

As part of its filing, the defense has represented that Ms. Odokara has used her company, Women in Need Industries, Inc. ("WINI"), solely for lawful and laudable purposes.  While the government has no information on WINI since defendant Odokara moved to Maine, it does have information which suggests that defendant Odokara used WINI for improper purposes in 2001

and 2002. The government presents this information to the Court solely to respond to the defendant's representations about WINI.

In the fraud alleged in this case, from March 2001 through July, 2001, the defendant Odokara fraudulently received $108,666.24 into her personal account at the Bank Fund -Staff Federal Credit Union ("BFSFCU") from the World Bank via the co-defendant Ms. Koundoul, and she then transferred $41,513 to Ms. Koundoul. PSR § ¶¶ 13-14. At this time, defendant Odokara also had an account open at BFSFCU in the name of WINI. As she obtained the fraudulent wires from the World Bank via Ms. Koundoul, defendant Odokara transferred approximately $38,000 of the World Bank assets into her WINI account at BFSFCU. See Attach. 1 (FBI 302 memorandum relating to transfers of the World Bank money from Odokara's personal account to WINI account). In turn, defendant Odokara spent the money transferred to the WINI account, and withdrew thousands of dollars cash through numerous ATM withdrawals. See Attach. 2 (WINI account records for May to September, 2001). In short, defendant Odokara used WINI to help spend illicit proceeds.

In addition, the government is aware of two instances where defendant Odokara used WINI to open a bank account, deposit counterfeit or bad checks into those accounts, and then obtain money off the accounts before the counterfeit check was discovered. First, as described in Attachment 3,[1] in May, 2001 defendant Odokara opened a bank account at ALLFIRST bank in name of WINI, and on November 5 and 6, 2001, she deposited two counterfeit checks valued at over $100,000 into the account; over the next week defendant Odokara attempted to withdraw

---

[1] The attachment contains (a) 302 investigative report from a Security Officer at ALLFIRST Bank, (b) a letter from ALLFIRST Bank to the FBI, and (c) a Suspicious Activity Report and attachments that was prepared by ALLFIRST Bank on February 2, 2002.

over $59,800 from that bank account. In some of these transactions, defendant Odokara then withdrew cash from the account and wrote checks on the WINI account to herself, and in one case deposited the check into her personal account. Despite stopping payment on a number of the checks issued by the defendant, ALLFIRST suffered a net loss of over $21,000, and it was unable to recover its losses from defendant Odokara. Importantly, ALLFIRST contacted defendant Odokara about the counterfeit check before January 25, 2002: in that conversation defendant Odokara claimed to have no idea about the counterfeit checks and promised to pay back the money, but she never did. See id. at Bates No. 04568.

In the second case, Ms. Odokara opened an account at SunTrust in WINI's name, and on March 6, 2002, she deposited a counterfeit check in the amount of $19,900 into the account. See Attach. 4 (302 memorandum relating to SunTrust transactions). Before the counterfeit check was detected, defendant Odokara wrote and cashed three checks to herself totaling $11,1106.05. See id. Again, this second incident occurred after ALLFIRST security personnel had spoken to defendant Odokara about the counterfeit checks that she had deposited in the ALLFIRST WINI account.

In sum, any suggestion that defendant Odokara has only used WINI for the good of the community must be balanced against this reality. Again, the government does not present this evidence as reason to punish the defendant for possible fraud associated with her use of WINI, but merely to set the record straight regarding defendant Odokara's use of WINI.

    B.    <u>Community Interests</u>

The defense argues that incarcerating defendant Odokara or placing her into a halfway house will make it impossible for her to serve the community in the way she does at present.

While a laudable goal, the government believes that it misapprehends the nature of community service, and the purpose of punishment in this case. Just because the defendant has recently become a well-respected member of the community in Maine by being a paid community organizer does not mean she cannot give back or provide service in other ways. It also does not mean that WINI cannot adapt to her current status, or that it cannot be temporarily led by another person. The defendant has had well over 18 months to prepare for sentencing and to put WINI into a position to weather her absence. In that time she could have advised all of her affected clients and fellow community organizers about her upcoming sentencing to avoid many of the issues now raised by the defense.

Further, it does not appear that WINI is providing long term care, or counseling, or that it has any paid staff. To the contrary, it appears that WINI and defendant Odokara's primary work is in advocacy and fund-raising for a day care/community center that is still in the development and planning stages. While there is no doubt that the defendant will unlikely be able to answer emergency calls during any halfway house placement or imprisonment, there is no reason why other non-profits in the field in Portland couldn't be enlisted by defendant Odokara to help pick up the slack. See Attachment 5, "Maine Agencies with Specialized Services for LEP Persons," http://maine.gov/dhhs/oma/Multicultural Resource/lep-persons.html.[2]

Insofar as the defense is asking this Court to sentence the defendant to probation because halfway house placement or jail will significantly impact WINI and defendant Odokara's long term ability to help the community, this argument should be rejected. The reality is that almost

---

[2] The government notes that the State of Maine's description of WINI at this site does not mention a 24 hour crisis call service. See Attach. 5 at p.13.

4

every criminal defendant knows they face the possibility of public embarrassment when they commit crime, and defendant Odokara is no exception.  It is also true that defendants who attain public prestige face greater embarrassment than poor and anonymous defendants.  But this does not mean they should be treated differently.  Defendant Odokara has a history with the criminal justice system, and she profited from the scheme at issue in this case.  She knew she was taking a risk to commit the crime here, and if caught, that she could have faced much more significant penalties.   It is also true that a number of former felons have successfully re-entered society to become advocates for the community.  There is no reason why defendant Odokara could not become one of those success stories.

### III.  CONCLUSION

For the reasons stated herein, and previously stated at the last hearing, the United States respectfully asks that Ms. Odokara be sentenced to a split-sentence in Zone C, and ordered to pay restitution to the World Bank in the amount of $108,666.24.

          Respectfully submitted,

          JEFFREY A. TAYLOR
          UNITED STATES ATTORNEY


          _____/S/_____
          TEJPAL S. CHAWLA
          Assistant United States Attorney
          D.C. Bar # 464012
          Fraud & Public Corruption Section
          555 4th Street, N.W.
          Washington, D.C. 20530
          (202) 353-2442

CERTIFICATE OF SERVICE

I hereby CERTIFY that a copy of the foregoing has been sent by ECF filing to counsel for the defendant, Jonathan Jeffress, Federal Public Defender, 625 Indiana Ave., N.W. Suite 550, Washington, D.C. this 21st day of March, 2008.

_____/s/_____

Tejpal S. Chawla

ASSISTANT UNITED STATES ATTORNEY