IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | Cr. No. 06-045 (EGS) |
| SHALOME ODOKARA ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT SHALOME ODOKARA'S RESPONSE TO GOVERNMENT'S
SECOND SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

Ms. Shalome Odokara, by her attorney, hereby respectfully submits this Response to the Government's Second Supplemental Memorandum in Aid of Sentencing.

In its most recent filing, the government assets that it is "merely respond[ing] to certain representations made by the defense" in defendant's Second Supplemental Memorandum in Aid of Sentencing. The government then goes on to present a host of new, unfounded accusations concerning two bounced checks from 2001 and 2002–over six years ago–that are irrelevant to the issues raised in defendant's most recent sentencing brief, as well as incorrect on the facts.[1] The government's filing is unfortunate, because in addition to its factual inaccuracies, it is of very minimal assistance to the Court in resolving the issue the sentencing submissions were meant to address, *i.e.*, the suitability of halfway

---

[1] Incredibly, the government states that it "does not present this evidence as reason to punish the defendant for possible fraud associated with her use of WINI, but merely to set the record straight regarding Odokara's use of WINI." Gov. Mem. at 3. The government's purported basis for presenting this "evidence" is plainly pretextual. The fraud that occurred in this case in 2000-2001 occurred in connection with a WINI account at the World Bank. *See* Gov. Mem. at 2 (discussing use of WINI account in offense). Accordingly, the defense has never suggested that WINI was completely divorced from the fraud that occurred in this case back in 2000-2001, or that WINI has always been used "solely for lawful and laudable purposes." Gov. Mem. at 1. Clearly, the government has falsely attributed that claim to the defense in order to have a pretext for arguing that the information concerning the bounced checks is somehow relevant to the issues currently before the Court.

house placement as a condition of Ms. Odokara's probation.

**The Bounced Checks**

In its attempt to have the Court re-visit a sentence of imprisonment–a sentence the Court has already said it was not going to impose in this case–the government describes two incidents from 2001 and 2002 where Ms. Odokara bounced a check. As noted, these six and seven-year old incidents are simply irrelevant to the sentencing issues the Court ordered the parties to brief. In addition, the government never attempted to charge Ms. Odokara with fraud with respect to either of those instances, so what is the government's point here? The true facts are that Ms. Odokara bounced these checks, but with no knowledge that there was insufficient funds to cover either one. In addition, contrary to the government's insinuation that Ms. Odokara attempted to evade responsibility for the bounced checks, she always remained in contact with Allfirst bank concerning repayment of the withdrawn funds. When Allfirst merged into M&T Bank in 2003, the bank ceased communicating with Ms. Odokara concerning repayment. In sum, the issue of Ms. Odokara's bounced checks adds nothing to the Court's consideration of the section 3553 factors.

**The Halfway House Issue**

When the government finally reaches the relevant issue regarding whether halfway house placement should be a condition of Ms. Odokara's probation, it presents no facts but rather only arguments. The government's arguments are easily dismissed. First, the government suggests that incarcerating Ms. Odokara will not be a problem because WINI can "be temporarily led by another person." Gov. Mem. at 4. This argument shows a complete lack of familiarity with the role of Ms. Odokara with respect to WINI's operations. As the defense has amply demonstrated through multiple sentencing submissions, Ms. Odokara *is* the very substantial caregiver that is WINI. Without Ms Odokara's services, which are provided to the poor and to others in the community on a 24/7 basis,

WINI will die.

The government has no fear of WINI collapsing, though, because "there is no reason why other non-profits in the field in Portland couldn't be enlisted by defendant Odokara to help pick up the slack." Gov. Mem. at 4. What? The very premise of the government's argument–that cash-strapped, over-extended nonprofit organizations who service the most powerless members of our society are fungible entities that can instantly expand to fill any void–is absurd. In undersigned counsel's experience, at least, these vital public service organizations are already doing everything they can on behalf of their clients, often with very few resources. The government should not attempt to rationalize its way out of the inevitable damage that its sentencing recommendation would cause to Ms. Odokara and all the good work she performs for her community in Maine, should the Court follow the government's recommendation and incarcerate Ms. Odokara in prison or at a halfway house.

In its consideration of the 3553(a) factors, the defense respectfully submits that the central question for the Court is as follows: does the government's interest in incarcerating Ms. Odokara (either at a halfway house or in prison) for the 2001 offense of evading currency transaction reporting requirements outweigh all the good Ms. Odokara has done in the last six years, particularly when an inevitable consequence of incarcerating Ms. Odokara will be the complete destruction of WINI and its charitable work in Maine and nationwide? Respectfully, the answer is clearly no. Ms. Odokara's offense was not so grave that it is worth destroying all the good work she does for her community and for our country, and a proper consideration of the 3553 factors undoubtedly reflects that reality. Accordingly, the defense respectfully requests that the Court sentence Ms. Odokara to probation, without a condition of halfway house placement.

## CONCLUSION

The aforementioned information is submitted for this Court's consideration and to encourage the Court to sentence Ms. Odokara to probation, without a condition requiring halfway house placement.

>Respectfully submitted,
>A.J. Kramer
>Federal Public Defender
>
>
>_____/s/_____
>Jonathan S. Jeffress
>Assistant Federal Public Defender
>625 Indiana Avenue, N.W.
>Washington, D.C. 20004
>(202) 208-7500, ex.134